[Civ. No. 51539. Second Dist., Div. Five. Mar. 30, 1978.]

HARVEY KNOX, Plaintiff and Appellant, v.
PHIL STREATFIELD et al., Defendants and Respondents.

COUNSEL

John Brown and John Russell for Plaintiff and Appellant.

Patterson, Ritner & Lockwood, John Koslov and Myles M. Mattenson for Defendants and Respondents.

OPINION

**STEPHENS, J.**—Plaintiff Knox appeals from the trial court's dismissal of his third amended complaint without leave to amend. The action was brought against defendants Streatfield, et al., for damages for and injunctive relief for alleged violations of a declaration of restrictions of the Malibu Bay Club. The action purports to be a class action.

## FACTS

Plaintiff Harvey Knox filed a complaint on November 14, 1975, on his own behalf and on behalf of others similarly situated. The class of persons he sought to represent are those owners of property located within the Malibu Bay Club who had allegedly been damaged by defendants. The defendants are owners, agents of said owners, or persons in possession of real property located at the Malibu Bay Club project.

Plaintiff alleged in his complaint that he, and those similarly situated, suffered damages as a proximate result of defendants' violations of the declaration of restrictions, of which he alleges they had actual and/or constructive notice by virtue of their ownership and possession of property in the Malibu Bay Club. The original declaration of restrictions subjected only the real property shown as parcels B, B-1 and B-2 in the exhibit A annexed to the declaration. By an amendment to the declaration recorded on January 5, 1972, all of the real property shown on exhibit A annexed to the declaration is subject to the restrictions.

Some of the pertinent restrictions read in part:

"2. *Restriction of Use*:

"(a) The subject property is hereby restricted to residential use. No buildings or structures shall be erected or placed, temporarily or permanently, upon subject property other than residences of a type approved by the Architectural Committee.

"	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.

"(c) No advertising signs . . . , billboards, unsightly objects, unsightly appearance or nuisance shall be erected, placed or permitted to remain on any portion of the subject property. . . .

"	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.

"(e) No clothes lines, equipment, refuse containers, wood piles, or storage piles shall be erected, placed or permitted to remain on any parcel to be viewed from any other parcel, residence, or from the common areas. . . .

"(f) All sidewalks, entries and passages outside of the residences shall remain unobstructed and shall not be used for purposes other than ingress and egress to and from the residences.

". . . . . . . . . . . . . . . . . .

"7. *Maintenance, Repairs, Alterations and Restorations*:

"(b) No additions, alterations, repairs or restorations to the exterior or structural portions of any building nor changes in or additions of awnings, walls and other structures on the property shall be commenced, erected or maintained until two sets of plans and specifications showing the nature, kind, shape, height, materials, location and approximate cost of same shall have been submitted to and approved in writing as a conformity and harmony of external design and location with existing structures in the subdivision by an Architectural Committee . . . ."

Plaintiff Knox alleged the following violations by different defendants: Addition of a storage shed, painting portions of the common area royal blue and grey, construction of a sliding glass door, addition of storage bins, sheds and cabinets on the sides of carports, implantation of a fence constructed of telephone poles and rope, construction of a log gate and dog pen and a sun deck on an area adjacent to the Promenade, an outdoor patio, erection of signs, all without approval of the "Architectural Committee."

Plaintiff Knox alleged that the damages consisted of not being able to sell and convey units in the Malibu Bay Club for as much money as could be obtained were it not for the alleged violations, and that the market value of each unit was reduced in amounts from $5,000 to $10,000, which differs from unit to unit as a result of differences in size and desirability.

Plaintiff Knox also prayed for injunctive relief enjoining defendants from further violating the declaration of restrictions.

Defendants' demurrers were sustained to the original and three amended complaints, each consisting of similar allegations, the last without leave to amend, and judgment was entered ordering the dismissal of the action. Plaintiff appeals from this judgment. Prior to the judgment, plaintiff Knox had dismissed the complaint as to defendant Phil Streatfield only, with prejudice.

ISSUES

Plaintiff contends that the trial court erred in determining that (1) the allegations in his complaint did not constitute a class action, and (2) in any event, his complaint did not allege sufficient facts to constitute an individual cause of action.

DISCUSSION

1. *Class Action*

██ When it is stated in a declaration of restrictions of a subdivision such as the one in this case that the restrictions are for the benefit of each owner of any portion of the real property, and shall inure to the benefit of and be binding upon each successor in interest of the owners thereof, it is settled that each such owner can sue other owner or owners to enforce these restrictions. (See *Alderson* v. *Cutting* (1912) 163 Cal. 503, 504, 505 [126 P. 157].) Whether all the owners can sue as a class the "violating owners" is an issue of first impression in this jurisdiction.

Where there is an equitable servitude in favor of several lot owners, and some, but not all, of the lot owners bring an action to enforce the restrictions, it was held in *Burkhardt* v. *Lofton* (1944) 63 Cal.App.2d 230, 237 [146 P.2d 720], that the determination of the action did not necessitate the bringing in of the other lot owners.

As we will see, the converse is not necessarily true. In a project, tract, or subdivision consisting of about 136 residences or condominiums, can all the owners join in a single action to enforce the restrictions against the other owners who allegedly violated some of these restrictions? We hold that a class action is not appropriate under these circumstances.

██ In California, section 382 of the Code of Civil Procedure deals with representative actions: ". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." The courts have interpreted this section as establishing two requirements for class actions, both of which must be satisfied: (1) an ascertainable class, and (2) a well defined community of interest in the questions of law and fact involved affecting the parties to be represented. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].)

■ The first problem we encounter in the instant case is the ascertainability of the class. If we follow plaintiff's allegations in his complaint to the letter, that he brings the action on behalf of all the owners in the Malibu Bay Club, there is no true class for the following reasons: some of the owners, those who allegedly violated some of the restrictions, would be at the same time plaintiffs and defendants, thus presenting an insurmountable conflict.

In *Horton* v. *Citizens Nat. etc. Bank* (1948) 86 Cal.App.2d 680 [195 P.2d 494], a lot owner in a tract brought an action on behalf of all lot owners against a bank to enforce provisions in a declaration of restrictions. Although the action was not directly against the other lot owners who had violated the restrictions, the court held that there could be no common class where enforcement of the agreement in favor of some would adversely affect the substantial interests of others.

■ If we follow plaintiff's reasoning in his opposition to the motion to strike, that the class is composed of all owners except those who allegedly committed the violations, the class would be ascertainable. But there still can be no class action in this case because the other requirement of common questions of law and fact is not satisfied.

■ This court, in *Beckstead* v. *Superior Court* (1971) 21 Cal.App.3d 780, 782 [98 Cal.Rptr. 779], cited from *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 813 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]: "For the purpose of determining if the demurrers should have been overruled, it is sufficient that there is a reasonable possibility plaintiffs can establish a prima facie community of interest among the class members . . . ."

■ Plaintiff contends that since the declaration of restrictions binds all owners of property in the Malibu Bay Club, there is a community of interest to see alleged violations stop. However, community of interest has been interpreted to mean common questions of law and fact (*Daar* v. *Yellow Cab, supra,* 67 Cal.2d 695), and that these common questions predominate over individual questions (*Bauman* v. *Islay Investments* (1975) 45 Cal.App.3d 797 [119 Cal.Rptr. 681]).

While it has been held that a common recovery or a common fund is not a prerequisite to a class action (*Slakey Brothers Sacramento, Inc.* v. *Parker* (1968) 265 Cal.App.2d 204, 207 [71 Cal.Rptr. 269], citing *Daar* v. *Yellow Cab, supra,* at p. 706), or that the damages need not be the same for each member of the class, it is well settled that when many issues

have to be determined individually, the requirement of common questions has not been satisfied. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 809; *Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 [198 P.2d 514].) That is, one of the purposes for which a class action is allowed, that of the efficient administration of justice, is not served in that case.

This is the situation we have in the case at bar. Although the underlying common issues in this case are the alleged violations of the declarations of restrictions, these alleged violations cannot impose liability per se, there must be damages in order to have monetary recovery. In this case, not only the issue of damages must be individually litigated, since each parcel of land is unique and damages vary with respect to the distance from the alleged violations, but also the issue of liability on the part of each defendant must be individually litigated. It is alleged that different defendants violated the declaration of restrictions in different ways and some of the alleged violations may not have caused damage to some of the members of the class by virtue of location.

The courts seem to treat differently the situation of a group of real property owners depending on whether the relief asked for is monetary damages or injunction. In *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223], the court held that a class action to recover damages for diminution in market value of real property was not appropriate because parcels of land are unique and it must be determined on an individual basis what the damages are to each parcel of land. On the other hand, although the suit was not instituted as a class action, this court in *Residents of Beverly Glenn, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724], held that a corporation had standing to sue for injunctive relief against a certain urban development on the grounds that the members of the corporation, owners of lots of land in a certain geographic area would be adversely affected by this development.[1]

In order for an injunction to issue, plaintiff must show that he has been or will continue to be damaged, and that there is no remedy at law to make him whole, that is, an injunction will be granted "[w]here it

---

[1]For a discussion of *Residents of Beverly Glenn, Inc.* v. *City of Los Angeles, supra,* contrasting it with *Friendly Village Community Assn., Inc.* v. *Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220 [107 Cal.Rptr. 123, 69 A.L.R.3d 1142], where a condominium homeowner's association was held not to have standing to sue because it owned no property, see Merrill, *An Overview of California Condominium Law,* (1974) 6 Sw.U.L. Rev. 487, 538-540.

would be extremely difficult to ascertain the amount of compensation which would afford adequate relief." (Code Civ. Proc., § 526, subd. 5; Civ. Code, § 3422, subd. 2; 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 50, p. 1499.) The court, in *Joyce* v. *Krupp* (1927) 83 Cal.App. 391, 398-399 [257 P. 124], held that "[w]here equitable relief is sought, proof of actual or substantial injury is not essential, the establishment of a violation of a uniform building restriction being all that is necessary to entitle a complaining owner to relief [citation]; . . ." When an ascertainable class of property owners institutes an action for equitable relief only, the action may proceed as a class action, provided that there are common questions of law and fact which predominate over individual questions. The action here fails as to the common questions, hence may not proceed even as to injunctive relief.

On the issue of monetary recovery for damages, the decisions vary depending on whether there is a basic underlying wrong, which once proven would lead to individual damages or whether there is physical damage to each lot necessitating individual litigation. An example of a case dealing with a basic underlying wrong is *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750],[2] where once a fraudulent scheme against homeowners in a tract was proven, each homeowner in the class would be able to establish his particular monetary damages. As the court put it, at pages 363-364, contrasting this case with *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447: "The issues presented therein were complex: the questions of liability and damage to each parcel varied since the characteristics of the parcels were dissimilar and the damages were allegedly caused by a multiplicity of factors including noise, vibration, and air pollution. Each parcel of land was affected differently according to its location relative to flight paths, the topography of the land, and the physical condition of each structure. [¶] In contrast, the problems of liability and the calculation of the diminished value of each parcel in the present case do not depend upon such variables because plaintiffs do not allege damage to their land as such. Consequently, the uniqueness of each parcel presents no obstacle to class treatment. Plaintiffs allege a standard claim of allegedly fraudulent representations, the terms of which are common to the class."

The case at bar could be analogized to *Occidental Land* in that there is a basic underlying wrong, the alleged violations of the declaration of

---

[2]Respondents cite the superceded *Occidental* opinion by the Court of Appeal, undoubtedly through inadvertence.

restrictions. Although the plaintiff does not allege damage to the land as such, as in *City of San Jose,* the uniqueness of each parcel does present an obstacle to class treatment. In this case, each plaintiff's recovery would depend on the characteristics of his or her particular parcel of land, such as the distance of the lots where the alleged violations have occurred, whether the particular plaintiff tried to sell his condominium; if he did, what other circumstances could have caused him or her to obtain the price they did, such as the condition of the property itself; the general trend of the market; *etc. All of these factors would have to be* determined individually, as well as the fact that each defendant's alleged violations may have contributed in a different way to the alleged reduction in price, due again to the distance to the other lots and the type of violation.

We hold that in this case a class action is not maintainable, not because of plaintiff's dismissal of one defendant, but because the two requirements for a class action fail. The trial court did not err in sustaining the demurrer to the class action.

Although we focus in this appeal on the class action issue, we touch on the following contention raised by respondents because we think it is important to the basic issue—the alleged violations of the declarations of restrictions.

A close reading of the declaration of restrictions indicates that its purpose is to maintain a certain appearance in the Malibu Bay Club.

Respondents contend that restrictive covenants are not favored, but are strictly construed against the grantor. In the case at bar, it is not the grantor who is trying to enforce the restrictions, but one for whose benefit the restrictions were created. ■ Respondents also cite *Bass* v. *Helseth* (1953) 116 Cal.App.2d 75, 83 [253 P.2d 525, 36 A.L.R.2d 853], but omit the crucial first words of the sentence: "*Under these circumstances* the literal reading of the restriction which gives the lesser burden on the lot must prevail." (Italics added.) However, the court, in *Bass,* said (p. 81): "There is no doubt that these rules [regarding the construction of covenants] are correct so far as they go, but they give only part of the picture." The court goes on to cite Corpus Juris Secundum, from which the above rule was cited: " 'This rule, however, obtains only where the parties have failed to express their meaning with sufficient clarity to enable the court to say that its construction is plain and admits of no doubt; the rule will not be applied to defeat the obvious purpose of the

restriction. . . .' " (P. 82.) 14 California Jurisprudence Second, Covenants, section 79, states at pages 89-90: "Although restrictive covenants are usually found in the deed conveying the property to which the restrictions relate, they may be created by contract. Contracts of this nature, restricting the use of property in some way, are necessarily recognized as valid, for the constitution guarantees the right to contract freely for lawful purposes." (Fn. omitted.)

For these reasons we hold that a declaration of restrictions such as the one in this case gives rise to a cause of action for damages for the violation of the restrictions. Of course, it is up to the plaintiff to prove that the restrictions were violated.

■ The remaining issue is whether the trial court abused its discretion in sustaining the demurrer to the third amended complaint without leave to amend. Code of Civil Procedure, section 472c provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made; provided, however, that this section shall not apply to any pending action or proceeding."

3 Witkin, California Procedure (2d ed. 1971) Pleading, section 844, page 2449, states: "An order sustaining a demurrer without leave to amend is followed by a *final judgment of dismissal* of the action, reviewable on appeal. (See infra. §853.) Such a drastic step is unwarranted, and ordinarily constitutes an abuse of discretion, if there is a reasonable possibility that the defect can be cured by amendment." (Italics in original.) Since we determined that these facts do not give rise to a class type of action, it is unreasonable to expect, after three amendments, that any further amendment might cure this "defect."

This court in *Beckstead* v. *Superior Court, supra,* 21 Cal.App.3d 780, 783-784 stated: "Conceptually, we suppose that any 'class action' complaint at the pleading stage is possible of being amended so as to plead a class action which will survive demurrer, but we also recognize that certain factual situations may negate such a possibility. It is in such factual situations that sustaining demurrers without leave to amend is proper." The present is such a factual situation.

## 2. *Individual Cause of Action*

Plaintiff Knox contends that the demurrer should not have been sustained as to his individual cause of action. The plaintiff has stated an individual cause of action for the alleged violations of the declaration of restrictions against the named defendants and the allegations do state an individual cause of action separate and apart from the class action on his behalf. Therefore, the sustaining of the demurrer as to Knox, individually, is reversed.

The judgment is affirmed as to the first cause of action and reversed as to the second cause of action.

Kaus, P. J., and Ashby, J., concurred.